**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

NATHANIEL MOORE,

                                        Plaintiff,

        v.

JESSE RODRIGUEZ, *et al.*,

                                        Defendants.

Case No. 20-cv-01481-BAS-BGS

**ORDER:**

**(1) GRANTING IN PART AND DENYING IN PART THE RODRIGUEZ DEFENDANTS' ANTI-SLAPP MOTION TO STRIKE (ECF No. 18);**

**(2) GRANTING IN PART AND DENYING IN PART THE RODRIGUEZ DEFENDANTS' MOTION TO DISMISS (ECF No. 19);**

**(3) DENYING AS MOOT THE RODRIGUEZ DEFENDANTS' REQUEST FOR JUDICIAL NOTICE (ECF No. 20); AND**

**(4) GRANTING MOTION TO DISMISS BY THE COUNTY OF SAN DIEGO (ECF No. 21).**

Plaintiff Nathaniel Moore served time in prison for voluntary manslaughter, and while imprisoned, he received counseling from a psychiatrist. Upon release, he found a job as a bartender and dated Defendant Elizabeth "Liz" Rodriguez, who is a prosecutor at the San Diego District Attorney's Office. Defendant Jesse Rodriguez, father of Liz, was a former Superior Court Judge and then the Assistant District Attorney in the same office where Liz worked as a prosecutor. Liz and Moore had a child together and moved into Jesse's house, but the couple's relationship eventually came to an end. Liz and Moore entered into a custody battle over their son. Moore alleges that Jesse and Liz ("the Rodriguez Defendants") threatened to bring criminal charges against him if he did not stop pursuing custody over his son and, in the process of carrying out the threat, abused their office as county prosecutors. According to Moore, the Rodriguez Defendants fraudulently obtained his prison psychiatric records and used them against him in family court. Moore separately alleges that the Rodriguez Defendants directed a county investigator to conduct a baseless investigation of Moore's unemployment benefits application for perjury.

Moore brings five causes of action against the Rodriguez Defendants: violation of the Fourteenth Amendment; violation of the Bane Act, Cal. Civ. Code § 52.1; violation of the right to privacy under the California Constitution; violation of the California Information Practices Act, Cal. Civ. Code § 1798.53; and negligence. Against San Diego County, Moore raises a negligence claim under the theory of vicarious liability.

The Rodriguez Defendants raise an anti-SLAPP motion to strike Moore's claims arising from Liz's filing of domestic violence reports against Moore and using Moore's prison records at mediation, under California Code of Civil Procedure section 425.16. (Rodriguez Defs.' Mot. Strike ("Mot. Strike"), ECF No. 18.) The Rodriguez Defendants also move to dismiss all claims raised against them under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Rodriguez Defs.' Mot. Dismiss, ECF No. 19.) In connection with the motion, the Rodriguez Defendants request that the Court take judicial notice of a police report by the San Diego Police Department. (Rodriguez Defs.' Req. Judicial Notice

("RJN"), ECF No. 20.)  San Diego County moves to dismiss the negligence claim raised against it.  (County Def.'s Mot. Dismiss, ECF No. 21.)

Moore opposes the motion to strike and moves for attorney's fees under the anti-SLAPP statute.  Moore requests the Court to deny Defendants' motions to dismiss.  In case the Court grants any motions in favor of Defendants, Moore moves in the alternative for leave to file a Second Amended Complaint.

The Court finds the motions suitable for determination on the papers submitted and without oral argument.  *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1).

# BACKGROUND

## I.    Factual Background

In 1999, Moore was an aspiring actor living in Los Angeles, California.  (FAC ¶ 8.) One day, Moore got into a road-rage fight with several other men.  (*Id.*)  The melee ended only after Moore stabbed and killed one of the combatants.  (*Id.*)  Faced with prosecution, Moore pleaded guilty to voluntary manslaughter and was sentenced to twelve years in prison.  (*Id.* ¶ 9.)  While serving time in prison, Moore attended therapy sessions with a psychiatrist. (*Id.* ¶ 10.)  Moore was released from prison in 2009, and discharged from parole in 2012.  (*Id.* ¶ 11.)

In April of 2013, Moore was working as a bartender when he met Defendant Liz Rodriguez.  (FAC ¶ 11.)  At that time, Liz was a prosecutor with the San Diego County District Attorney's Office, and Liz's father, Defendant Jesse Rodriguez, was a former Superior Court Judge and then the Assistant District Attorney.  (*Id.* ¶ 12.)

Moore and Liz dated for a few years and started trying for a baby.  (*Id.* ¶ 13.)  The two bought a house in Carlsbad in March 2016.  (*Id.*)  By September 2016, the couple found out that Liz was pregnant.  (*Id.*)  The news of the pregnancy came at a time when the couple's relationship was already faltering.  (*Id.*)

In March of 2017, Moore lost his job as a bartender, after his employer accused him of giving away free drinks.  (FAC ¶ 14.)  Moore disputed the accusation that he violated

- 3 -

the bar's policy, to no avail. (*Id.*) Moore filed an application for unemployment benefits with California's Employment Development Department ("EDD"). (*Id.* ¶ 15.) The EDD denied his application. (*Id.*) The EDD's decision stated that Moore was not eligible for unemployment benefits because his employer terminated his employment for cause. (*Id.*)

In May 2017, Liz gave birth to their son, G.M. (FAC ¶ 16.) Liz, Moore, and G.M. moved into Liz's parents' home in Chula Vista. (*Id.*) Eventually, Liz and Moore's relationship fell apart. (*Id.*) Liz threatened Moore that if Moore sought custody of his son she and her father would send him back to prison. (*Id.* ¶ 16.) The threat included charging Moore with perjury for the representations he made to the EDD in connection with his unemployment benefits application. (*Id.*) Moore moved out in February 2018 and filed for joint custody of G.M. in May 2018. (*Id.* ¶ 17.)

<u>Moore's Prison Psychiatric Records.</u> Liz and Moore went to mediation before a family court mediator on August 15, 2018. (FAC ¶ 17.) During the mediation, Liz produced a copy of Moore's prison psychiatric records. (*Id.* ¶ 18.) Moore was caught by surprise as he had neither consented to releasing his records nor been made aware of a subpoena request. (*Id.*) Liz initially claimed that she obtained Moore's records through a public record request, but she later admitted that she lied. (*Id.* ¶ 19.) Moore believes that Liz and Jesse "fraudulently" obtained his prison psychiatric records by misusing "their official roles and capacities as district attorneys. . . while using the resources and authority of the District Attorney's Office." (*Id.* ¶ 20.) In September 2018, when the family court allowed Moore to have overnight visits with G.M., Liz filed an ex-parte request for a temporary restraining order (TRO) on the basis that Moore had a mental disorder. (*Id.* ¶ 21.) The family court denied Liz's request for the TRO. (*Id.*)

<u>Domestic Violence Allegations Against Moore.</u> At a hearing that took place on September 25, 2018, the family court judge explained that the court had denied issuing the TRO against Moore because there was no evidence of domestic violence. (FAC ¶ 21.) The same day, Liz filed a police report with the Chula Vista Police Department, accusing Moore of domestic violence. (*Id.* ¶ 22.) Based on the police report, Liz sought a restraining

- 4 -

order.  (*Id.* ¶ 23.)  This time, the family court issued a TRO against Moore, effective October 4, 2018, prohibiting him from seeing G.M.  (*Id.* ¶ 23.)  Twenty days later, on October 24, 2018, the family court removed the TRO, finding a lack of evidence that Moore posed a risk to G.M.  (*Id.*)

The domestic violence case against Moore was forwarded to Chief Deputy Tracy Prior on November 20, 2018.  (FAC ¶ 24, Ex. 1.)  She notified her boss, Jesse Rodriguez, and sought his permission to initiate the process to transfer the case to the conflict division of the California Attorney General's Office.  (*Id.*)  Jesse responded to Prior by stating, "[o]nce you get the case call me so I can facilitate it before you talk to [the California Attorney General's Office]."  (*Id.*)  On December 17, 2018, Jesse retired from his position as the Assistant District Attorney.  (*Id.* ¶ 25.)  On January 23, 2019, the California Attorney General's Office notified Prior that no charges would be filed against Moore.  (*Id.* ¶ 25, Ex. 2.)

<u>Perjury Investigation.</u>  Separately, two weeks after the family court vacated the TRO, an investigator employed by the San Diego District Attorney's Office, Tony Giralamo, launched an investigation against Moore for perjury in connection with his application for unemployment benefits.  (FAC ¶ 26.)  Giralamo acted upon the orders from Chief Deputy District Attorney Dominic Dugo.  (*Id.*)  Although Giralamo's direct supervisor was Senior District Attorney Daman Mosler, Mosler was kept in the dark about Giralamo's investigation in its initial stages.  (*Id.* ¶¶ 26, 30.)

On November 8, 2018, Giralamo emailed his counterpart at the EDD, asking for a copy of Moore's application for unemployment benefits.  (*Id.* ¶ 27.)  Giralamo's email stated that the District Attorney's Office was "considering filing charges for false application of benefits."  (*Id.*)  A criminal investigator employed by the EDD reviewed Moore's file and notified Giralamo that the file contained no misstatements or falsehoods.  (*Id.*)  Giralamo renewed his request on November 29, 2018, writing that he was "gathering additional info for one of our Chiefs looking into the case."  (*Id.* ¶ 28.)  Giralamo obtained

and emailed Dugo the audio tapes of Moore's EDD hearing. (*Id.* ¶¶ 28–29.) Dugo emailed Giralamo back, stating "[w]e need to listen to it." (*Id.* ¶ 29.)

When Giralamo's direct supervisor, Mosler, learned that Giralamo was investigating Moore without Mosler's knowledge, Mosler expressed his concern to the Assistant District Attorney David Greenberg. (FAC ¶ 30.) Mosler told Greenberg that the "extreme interest" in Moore's unemployment benefits application was strange because the District Attorney's Office "almost never" received cases from the EDD for prosecution. (*Id.*) Mosler learned that his supervisor, Dugo, bypassed Mosler to order Giralamo to investigate Moore. (*Id.*) According to Mosler, Dugo instructed Giralamo to keep the investigation secret from the official chain of command and misled Giralamo to believe that the marching orders came from District Attorney Summer Stephan, when that was not true. (*Id.* ¶¶ 30–31.) Mosler found that the investigation presented a conflict of interest for the San Diego County District Attorney. (*Id.* ¶ 31.) When Dugo did not halt his pursuit, Mosler wrote to Greenberg and Stephan:

> Dom [Dugo] called today and asked for a copy of the audio file of the secret investigation he unknowingly did into Lis [sic] Rodriguez's ex-boyfriend. He said Jesse wanted the audio file. Tony [Giralamo] could not comply as I have it in an off-site secure location. Tony [Giralamo] did not know that I secured the evidence and told Dom [Dugo] he would look for it. I accept that Dom [Dugo] is chief deputy over my division but his continued actions require me to resign as Chief. I cannot accept this level of unethical conduct by my immediate supervisor.

(*Id.* ¶ 32.)

## II. Procedural Background

Moore brought the present lawsuit against the Rodriguez Defendants, the County of San Diego, and Doe Defendants on July 31, 2020. (Compl., ECF No. 1.) Defendants filed an initial round of motions to strike and dismiss the Complaint, which all became moot after Moore filed the First Amended Complaint. (First Am. Compl. ("FAC"), ECF No. 17.) Moore's FAC raises five causes of action: (1) violation of substantive Due Process

under the Fourteenth Amendment of the United States Constitution; (2) violation of the Bane Act, Cal. Civ. Code § 52.1; (3) violation of the right to privacy guaranteed under the California Constitution; (4) violation of the California Information Practices Act, Cal. Civ. Code § 1798.53; and (5) negligence. (FAC ¶¶ 47–87.) Only the fifth cause of action is raised against all Defendants; the first through fourth causes of action are not raised against San Diego County.

The Rodriguez Defendants move to strike Moore's FAC under California's anti-SLAPP statute and dismiss the FAC under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Mot. Strike, ECF No. 18; Rodriguez Defs.' Mot. Dismiss, ECF No. 19.) The County of San Diego moves to dismiss the negligence claim against it under Rule 12(b)(6). (County Def.'s Mot. Dismiss, ECF no. 21.) After several recusals, the case was assigned to the undersigned judge on January 5, 2021. (Order, ECF No. 30.) The motions are ripe for the Court's decision.

## ANTI-SLAPP MOTION

### I. Legal Standard

California's anti-SLAPP statute provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. Proc. Code § 425.16(b)(1). As set forth in the statute's findings and declarations, the Legislature's purpose in enacting the anti-SLAPP statute is to "encourage continued participation in matters of public significance," which "should not be chilled through abuse of the judicial process." *Id.* § 425.16(a). In other words, the anti-SLAPP statute "is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern." *Wilson v. Cable News Network*,

*Inc.*, 7 Cal. 5th 871, 883–84 (2019); *accord Baral v. Schnitt*, 1 Cal. 5th 376, 392 (2016) (holding that "the central purpose of the statute" is to "screen[] out meritless claims that arise from protected activity, before the defendant is required to undergo the expense and intrusion of discovery"). Given the purpose of the anti-SLAPP statute, it must be "construed broadly." Cal. Civ. Proc. Code § 425.16(a); *Flatley v. Mauro*, 39 Cal. 4th 299, 312 (2006).

Courts apply a two-part test to determine whether an action is subject to an anti-SLAPP special motion to strike. *Navellier v. Sletten*, 29 Cal. 4th 82, 85, 88 (2002). First, the moving party must establish that "the challenged cause of action is one arising from protected activity." *Id.* Second, once the party makes a threshold showing that the act in question is protected, the burden shifts to the non-moving party. To resist the special motion to strike, the non-moving party must establish "a probability of prevailing on the claim." *Id.*

Once the two-part test is satisfied, the anti-SLAPP motion operates to strike "claims that are based on the conduct protected by the statute." *Baral*, 1 Cal. 5th at 382. "[L]ike a conventional motion to strike," an anti-SLAPP motion "may be used to attack parts of a count as pleaded." *Id.* at 393. "Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." *Id.* at 396.

## II. Analysis

### A. Step One: Claims Arising from Protected Activity

The Rodriguez Defendants have the initial burden to establish that the claims they seek to strike under the anti-SLAPP statute arise from protected activity. *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036 (1997). Under the statute, "[a] claim arises from protected activity when that activity underlies or forms the basis for the claim." *Park v. Bd. of Trustees of Cal. State Univ.*, 2 Cal. 5th 1057, 1062 (2017). To satisfy the first step, the Rodriguez Defendants must persuade the Court that their alleged conduct itself

was "an act in furtherance of the right of petition or free speech." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002); *see also Flatley*, 39 Cal. 4th at 314 (holding that a defendant has the burden to "present a prima facie showing that the plaintiff's causes of action arise from acts of the defendant taken to further the defendant's rights of free speech or petition in connection with a public issue").

"To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.'" *Wilson*, 7 Cal. 5th at 884 (quoting *Park*, 2 Cal. 5th at 1063). An allegation that "merely provide[s] context, without supporting a claim for recovery" is only incidental or collateral to the claim and "cannot be stricken under the anti-SLAPP statute." *See Baral*, 1 Cal. 5th at 394. When a claim is "based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage." *Id.* at 396.

Next, taking only allegations that supply the elements of a claim, courts "must evaluate whether the defendant has shown any of these actions fall within one or more of the four categories of 'act[s]' protected by the anti-SLAPP statute." *Wilson*, 7 Cal. 5th at 884 (citing Cal. Civ. Proc. Code § 425.16(e)). Those four categories of acts are:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. Proc. Code § 425.16(e).

Finally, courts must determine whether the challenged conduct falls under any of the recognized exemptions to the anti-SLAPP statute. The statute exempts public enforcement actions, Cal. Civ. Proc. Code § 425.16(d); actions brought "solely in the public interest,"

*id.* § 425.17(b); and causes of action that involve certain kinds of commercial speech, *id.* § 425.17(c).[1]  There are also judicially created exemptions that apply to certain actions, which include speech or petitioning activity that is illegal as a matter of law.  *See infra* Part II.A.1.a.iii.

Here, the Rodriguez Defendants argue that Moore's claims for violation of the Bane Act, violation of right to privacy, violation of Civil Code section 1798.53, and negligence arise from protected activity.  To determine whether those claims satisfy the first step of the anti-SLAPP analysis, the Court turns to examine whether Moore's allegations supply the elements of each claim.

## 1. Violation of the Bane Act

California Civil Code section 52.1, known as the Bane Act, "protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion.'"  *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018).  The elements of a Bane Act claim are: (1) the defendant interfered with or attempted to interfere with the plaintiff's constitutional or statutory right by threatening or committing violent acts; (2) the plaintiff reasonably believed that if he or she exercised his or her constitutional right the defendant would commit violence against him or her or his or her property; (3) the defendant injured the plaintiff or the plaintiff's property to prevent him or her from exercising his or her constitutional right or retaliate against the plaintiff for having exercised his or her constitutional right; (4) the plaintiff was harmed; and (5) the defendant's actions were a substantial factor in causing the plaintiff's harm.  *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 882 (2007) (citing California's model Bane Act instruction, CACI

---

[1] The statutorily created exemptions may not apply to certain defendants. Cal. Civ. Proc. Code § 425.17(d).

Instruction No. 3066); *accord Lyall v. City of Los Angeles*, 807 F.3d 1178, 1195–96 (9th Cir. 2015).

Moore alleges that the Rodriguez Defendants interfered with his constitutional parental rights by threat, intimidation, or coercion when they

> 1) us[ed] their official position to illegally obtain Moore's personal and confidential psychiatric records from Richard J. Donovan State Prison, records which were then used by . . . Liz Rodriguez . . . during court mandated custody proceedings in a failed attempt to prove that Moore was an unfit parent;

> 2) us[ed] their authority and by purporting to act on behalf of their official duties, Defendants influenced District Attorney Investigator [Giralamo] to obtain copies of Moore's application and testimony from Moore's claim for unemployment benefits in a failed attempt to have Moore charged with perjury; and

> 3) us[ed] their contacts at the Chula Vista Department and the California State Attorney's General's Office in a failed attempt to have Moore charged with domestic violence.

(FAC ¶ 61.)

The Rodriguez Defendants only argue that the first and third allegations constitute protected activity. (Mem. ISO Mot. Strike, ECF No. 18-1 at 6–11.) They do not seek to strike Moore's claim arising from the perjury investigation. The Court examines three issues as to each alleged conduct: first, whether the conduct supplies the elements of Moore's Bane Act claim; second, whether the alleged act falls within one or more of the four categories of acts protected by the anti-SLAPP statute; and third, whether any recognized exemption to the anti-SLAPP statute applies.

### a. Removing and Using Moore's Prison Psychiatric Records

Moore alleges that the Rodriguez Defendants illegally obtained his prison psychiatric records and produced them at mediation in an effort to infringe his parental

rights over his son. For the following reasons, the Court finds that Moore's Bane Act claim tied to his prison psychiatric records does not arise from protected activity.

###### i.  The Allegations Supply the Elements of the Bane Act Claim.

The allegations that the Rodriguez Defendants illegally obtained Moore's confidential prison counseling records and used them at mediation supply the elements of Moore's Bane Act claim. Moore alleges that Liz "threatened to use her power as a San Diego County District Attorney, and to unleash the awesome power of her father, Defendant Jesse Rodriguez, to send Moore 'back to prison' . . . in order to coerce Moore to abandon his parental rights to his son G.M." (FAC ¶ 60.) Although Moore now argues that Liz's production of records at mediation is incidental to the Bane Act claim, his pleading suggests otherwise. According to the FAC, the Rodriguez Defendants carried out "their threats and intimidation by way of . . . using their official position to illegally obtain Moore's personal and confidential psychiatric records, . . . which were then used . . . during court mandated custody proceedings in a failed attempt to prove that Moore was an unfit parent." (*Id.* ¶ 61.) By Moore's own words, the production of his prison records at mediation was itself a means for the Rodriguez Defendants to carry out their threat to curtail his parental rights. Thus, Liz's use of Moore's prison psychiatric records goes to an element of his Bane Act claim.

###### ii.  The Alleged Acts Constitute Protected Activity under § 425.16(e).

Communications made during court-ordered mediation, like the one at issue here, are considered to have been made in connection with a judicial proceeding within the meaning of the anti-SLAPP statute. *See Optional Cap., Inc. v. Akin Gump Strauss, Hauer & Feld LLP*, 18 Cal. App. 5th 95, 114 (2017) ("[B]ecause settlement negotiations are regarded as an exercise of the right to petition, communications during such negotiations

are regarded as having been made in connection with the underlying lawsuit for purposes of section 425.16, subdivision (e)(2).").

### iii.    The *Flatley* Exemption Applies.

The next question is whether any exemptions take the challenged conduct outside the scope of protection offered by the anti-SLAPP statute.  "[S]ection 425.16 cannot be invoked by a defendant whose assertedly protected activity is illegal as a matter of law and, for that reason, not protected by constitutional guarantees of free speech and petition." *Flatley*, 39 Cal. 4th at 317.  In so holding, the California Supreme Court relied on the plain meaning of subdivision (a) of the anti-SLAPP statute, which limits the scope of protection of the statute to "the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances" against "the abuse of the judicial process." *Id.* at 313 (citing Cal. Civ. Proc. Code § 425.16(a)).  Considering the statute's language, the court held that the protection should be declined at the first step only as to those activities established illegal "as a matter of law—either through defendant's concession or by uncontroverted and conclusive evidence." *Id.* at 316.  If a party disputes the illegality of the challenged conduct, such factual dispute must be examined at the second step. *Id.* at 316 (holding that the factual dispute "must be raised by the plaintiff in connection with the plaintiff's burden to show a probability of prevailing on the merits").

Further, the *Flatley* exemption for illegal activity "applies only to criminal conduct, not to conduct that is illegal because [the conduct is] in violation of statute or common law." *Bergstein v. Stroock & Stroock & Lavan LLP*, 236 Cal. App. 4th 793, 806 (2015); *accord Ass'n for L.A. Deputy Sheriffs v. L.A. Times Commc'ns LLC*, 239 Cal. App. 4th 808, 817 (2015).  In *Bergstein*, the plaintiffs alleged that the defendant lawyers engaged in illegal conduct by "participat[ing] in the theft of confidential and privileged documents and information" to be used for litigation against the plaintiffs.  Finding that the alleged theft of confidential documents did not amount to criminal conduct, the court declined to apply the *Flatley* exemption.  *See Bergstein*, 236 Cal. App. 4th at 802, 805–13.

- 13 -

Here, Moore's allegation is that the Rodriguez Defendants "fraudulently" obtained Moore's prison psychiatric records by "using the resources and authority of the District Attorney's Office." (FAC ¶ 20.) Simulating official inquiries is a misdemeanor under the California Penal Code section 146b, which provides:

> Every person who, with intent to lead another to believe that a request or demand for information is being made by the State, a county, city, or other governmental entity, when such is not the case, sends to such other person a written or printed form or other communication which reasonably appears to be such request or demand by such governmental entity, is guilty of a misdemeanor.

Moore's allegations satisfy the elements set forth in section 146b. Because the Rodriguez Defendants' alleged conduct is illegal as a matter of law, the *Flatley* exemption applies, and Moore's Bane Act claim concerning his prison psychiatric records does not arise from protected activity.

### b. Filing Police Reports Against Moore and Attempting to Charge Moore with Domestic Violence

#### i. The Allegations Supply the Elements of the Bane Act Claim.

The Rodriguez Defendants seek to strike Moore's Bane Act claim based on his allegations that (1) Liz filed false reports of domestic violence against Moore to the Chula Vista Police Department, with which the Rodriguez Defendants "trumped up false domestic violence charges against Moore," (FAC ¶¶ 22, 52), and (2) Jesse sought to use his contacts at the California Attorney General's Office to prosecute Moore for domestic violence. (*Id.* ¶¶ 24, 61.) In other words, Moore's theory is that the Rodriguez Defendants threatened to prosecute him for domestic violence and carried out that threat by filing false police reports and exerting influence over the Chula Vista Police Department and the California Attorney General's Office. Moore's allegations supply the elements of a Bane Act claim.

- 14 -

### ii.   The Alleged Acts Constitute Protected Activity under § 425.16(e).

Liz's filing of police reports raising domestic violence allegations against Moore is an exercise of the right to petition the government protected under section 425.16(e). *See Chabak v. Monroy*, 154 Cal. App. 4th 1502, 1511–12 (2007) (finding that the defendant's reporting of the plaintiff's alleged sexual assault to the police department "clearly arose from protected activity").

Also at issue is whether Jesse's alleged collusion with the Chula Vista Police Department or his attempts to influence the California Attorney's General's Office to prosecute Moore implicate protected activity. California courts have interpreted the anti-SLAPP statute according to its plain meaning and found that the "arising from" prong of Section 425.16 "encompasses any action based on protected speech or petitioning activity as defined in the statute." *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 734 (2003). Based on the plain reading of the statute, an act that fits the definition found in subdivision (e) arises from protected activity, even if the act was motivated by malice or lack of probable cause. *Id.* For example, one court found that the San Francisco City Attorney's request that the District Attorney's Office prosecute the plaintiff based on fabricated facts arose from protected activity because the challenged conduct was "within the scope of conduct made in connection with executive or judicial proceeding" under the plain language of the anti-SLAPP statute. *See Jen v. City & Cty. of San Francisco*, No. 15-CV-03834-HSG, 2016 WL 3669985, at *2, 12 (N.D. Cal. July 11, 2016) (construing Cal. Civ. Proc. Code § 425.16(e)(2)).

The same applies here. Jesse's communications were made to bring a criminal charge against Moore, which fits the definition of communication made in connection with an issue under consideration by an executive body. *See* Cal. Civ. Proc. Code § 425.16(e)(2); *Jen*, 2016 WL 3669985, at *12. The plain reading of the statute mandates the conclusion that the challenged conduct arises from protected activity.

20cv1481

Therefore, unless an exemption applies, Moore's Bane Act claim associated with the Rodriguez Defendants' threat to charge Moore with domestic violence arises from protected activity.

### iii. No Exemption Applies.

As an initial matter, there is no blanket exemption to the anti-SLAPP statute that applies to conduct carried out by public employees or their employers. *Jen*, 2016 WL 3669985, at *12 ("[P]ublic employees acting within the scope of their employment and their public employers are not automatically exempt from the protection of the anti-SLAPP statute."). Therefore, to be exempt, Liz's filing of the domestic violence complaints and Jesse's attempts to influence the domestic violence investigation must fall under a recognized exemption that brings those items outside the scope of the anti-SLAPP statute's protection.

Moore's allegation that Liz's police reports were false does not exempt his claim from the anti-SLAPP motion under *Lefebvre v. Lefebvre*, 199 Cal. App. 4th 696, 703 (2011), which applies to false accusations of criminal conduct. In *Lefebvre*, the plaintiff sued his former spouse for malicious prosecution and similar causes of action, after the defendant-spouse brought false criminal accusations against the plaintiff to gain an advantage in the couple's divorce proceedings. *Id.* at 700. The court found that the defendant spouse "[did] not contest that she submitted an illegal, false criminal report," and held that "[f]iling a false criminal complaint is an illegal activity, [and] not a constitutionally protected exercise of the right of petition or free speech" for purposes of the anti-SLAPP statute. *Id.* at 705–06. California courts construing *Lefebvre* have clarified that if the litigant disputes the falsity of the police report, the *Lefebvre* exemption does not apply to bring the police report outside the scope of protection of the anti-SLAPP statute. *See Kenne v. Stennis*, 230 Cal. App. 4th 953, 966 (2014) ("[T]he making of allegedly false police reports . . . can be protected petitioning activity under the first prong of the anti-SLAPP statute if the falsity of the report is controverted.").

Here, Liz disputes Moore's allegation that her police reports were false.  Namely, she states under penalty of perjury that "[a]ll of the information that [she] provided to the SDPD . . . was true and accurate."  (Elizabeth Rodriguez Decl. ¶ 3, ECF No. 18-3.)[2] Therefore, the *Lefebvre* exemption does not apply, and the factual dispute as to whether Liz's filing of the domestic violence reports against Moore was false should be resolved at the second step of the anti-SLAPP analysis.

In sum, the Rodriguez Defendants have shown that Moore's Bane Act claim arises from protected activity as to filing domestic violence complaints against Moore and attempting to exert influence over local and state governments to have Moore charged with domestic violence.

### 2.    Violation of the Right to Privacy

The elements of a cause of action for violation of the right to privacy are: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 990 (2011), *as modified* (June 7, 2011) (citing *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 39–40 (1994)).  To determine whether a person's constitutional right to privacy has been violated, courts analyze "whether his personal and objectively reasonable expectation of privacy has been infringed by an unreasonable government intrusion."  *Alarcon v. Murphy*, 201 Cal. App. 3d 1, 5 (1988).

Moore alleges that the Rodriguez Defendants "illegally and surreptitiously removed Plaintiff's confidential and privacy [sic] protected prison psychiatric records without his

---

[2] Moore's objection to the Rodriguez Defendants' declarations filed in support of their special motion to strike is overruled.  (ECF Nos. 23-2, 23-3.)  Moore relies on the legal standard applicable a motion to dismiss raised under Federal Rule of Civil Procedure 12(b)(6), which is not applicable to a special motion to strike filed under the California anti-SLAPP statute.

consent" and "then produced the records during a court ordered custody mediation." (FAC ¶ 69.) The analysis turns on whether these alleged actions constitute a serious invasion of privacy. "To be 'serious,' the invasion must constitute an 'egregious breach of the social norms underlying the privacy right.'" *Doe v. Beard*, 63 F. Supp. 3d 1159, 1169 (C.D. Cal. 2014) (citing *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 37 (1994)). "Actionable invasions of privacy also must be 'highly offensive' to a reasonable person." *Id.* (citing *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (2009)). In California, a high level of confidentiality is conferred on communications between a patient and mental health professional for purposes of obtaining psychotherapy. *See In re Lifschutz*, 2 Cal. 3d 415, 431–32 (1970) (holding that "the confidentiality of the psychotherapeutic session falls within" the zone of privacy guaranteed by the Constitution). Here, the unconsented disclosure of Moore's psychiatric records, not made through a formal record request, constitutes a serious invasion of privacy. Thus, the relevant allegations are not merely incidental to Moore's claim.

Liz's removal and use of Moore's prison psychiatric records constitutes communication made in connection with a judicial proceeding. Cal. Civ. Proc. Code § 425.16(e)(2); *Optional Cap., Inc.*, 18 Cal. App. 5th at 114. However, the illegal-act exemption under *Flatley*, 39 Cal. 4th at 317 applies, and the alleged communication is not protected under the anti-SLAPP statute. *See supra* Part II.A.1.a.iii.

Therefore, the Rodriguez Defendants have not shown that Moore's claim for a violation of the right to privacy arises from a protected activity.

### 3. Violation of California Civil Code Section 1798.53

California Civil Code section 1798.53, a part of the Information Practices Act, prohibits intentional disclosure of non-public information by persons other than those acting solely in their official capacity, when the disclosure is made with the actual or assumed knowledge that the disclosed information "was obtained from personal information maintained by a state agency or . . . a federal government agency." Cal. Civ.

Code § 1798.53. The alleged communications at issue are not merely incidental to Moore's section 1798.53 claim. However, as discussed in detail above, *see supra* Part II.A.1.a.iii, the Rodriguez Defendants' access to Moore's prison psychiatric records is illegal conduct that may be charged with the misdemeanor of simulating official inquiry under Cal. Penal Code § 146b. Thus, the *Flatley* exemption applies, and the Rodriguez Defendants have not shown that Moore's section 1798.53 claim arises from protected activity.

### 4. Negligence

Negligence requires a showing of duty, breach, causation, and harm. Moore's negligence claim is based on the theory that the Rodriguez Defendants breached their duty not to abuse their power as prosecutors. (FAC ¶ 81 ("As district attorneys, Defendants are precluded from accessing personal information and trumping up bad faith criminal investigations for personal gain.").) Specifically, Moore argues that the Rodriguez Defendants injured him by:

> 1) using their official position and authority to illegally obtain Moore's personal and confidential psychiatric records from Richard J. Donovan State Prison, records which were then used by Liz Rodriguez during mediation for the sole purpose of convincing the mediator that Moore was an unfit parent;
>
> 2) using District Attorney Investigator Gialarmo [sic] to obtain copies of Moore's application and testimony from Moore's claim for unemployment benefits in a bad-faith attempt to have Moore charged with perjury; and
>
> 3) using their contacts at the Chula Vista [Police] Department and the California State Attorney's General's Office in a faith [sic] attempt to have Moore charged with domestic violence.

(FAC ¶ 82.) The Rodriguez Defendants only seek to strike the first and third allegations. The arguments and the analyses mirror that raised against the Bane Act claim. For the same reasons stated above, the Rodriguez Defendants have met their burden to establish that the claim arises from protected activity as to the third allegation, involving the

domestic violence accusations against Moore, but not as to the first allegation, involving the illegal removal and use of Moore's prison psychiatric records. *See supra* Part II.A.1.

### 5. Conclusion

After weighing the challenged allegations against the elements of the respective claims at the first step of the anti-SLAPP inquiry, the Court finds that the Rodriguez Defendants have not met their burden to establish the following claims arise from protected activity: (1) violation of the Bane Act (Second Cause of Action), as it relates to the acquisition and use of Moore's prison psychiatric records; (2) violation of the right to privacy (Third Cause of Action); and (3) violation of California Civil Code section 1798.53 (Fourth Cause of Action).

The Rodriguez Defendants have met their burden to show that the challenged acts tied to the domestic violence accusations against Moore constitute protected activity. As to those acts, Moore's claims for the violation of the Bane Act (Second Cause of Action) and negligence (Fifth Cause of Action) arise from protected activity. The Court proceeds to the second step of the anti-SLAPP inquiry as to those two claims only.

### B. Step Two: Probability of Prevailing on the Merits

At the second step of the anti-SLAPP analysis, Moore has the burden "to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." *Baral*, 1 Cal. 5th at 396. To satisfy this burden, the plaintiff "may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence." *Sweetwater Union High Sch. Dist. v. Gilbane Bldg. Co.*, 6 Cal. 5th 931, 940 (2019) (citing *San Diegans for Open Gov't v. San Diego State Univ. Rsch. Found.*, 13 Cal. App. 5th 76, 95 (2017)). "The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment." *Baral*, 1 Cal. 5th at 396.

### 1. Violation of the Bane Act

The Rodriguez Defendants argue that Moore's Bane Act claim challenging the Rodriguez Defendants' alleged attempt to charge him with domestic violence is not legally and factually sufficient.

Legal Sufficiency. The Rodriguez Defendants argue that Moore has no claim regarding Liz's alleged false police report of domestic abuse because her conduct is absolutely privileged under section 47(b) of the California Civil Code. That statute confers absolute privilege over statements made "[i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law," with certain statutory exceptions. Cal. Civ. Code § 47(b). Namely, the statute was revised effective January 1, 2021, to add the following exception:

> (5) This subdivision does not make privileged any communication between a person and a law enforcement agency in which the person makes a false report that another person has committed, or is in the act of committing, a criminal act or is engaged in an activity requiring law enforcement intervention, knowing that the report is false, or with reckless disregard for the truth or falsity of the report.

*See* 2020 Cal. Legis. Serv. Ch. 327 (A.B. 1775). "Given this amendment, under current California law there is only a qualified privilege for reports of a crime—reports that are intentionally false or made with reckless disregard of their truth are not privileged." *Tuomela v. Waldorf-Astoria Grand Wailea Hotel*, No. CV 20-00117 JMS-RT, 2021 WL 233695, at *2 (D. Haw. Jan. 22, 2021). Because section 47(b) would not bar Moore's claim if it is shown that Liz's police reports were falsified, the Rodriguez Defendants' argument based on section 47(b) lacks merit.

Factual Sufficiency. Nonetheless, Moore's claim is not factually sufficient. He offers no evidence to support his allegations that Liz lied in filing the domestic violence reports against him, other than the fact that the charges against him were eventually dropped. (FAC ¶¶ 22, 52.) That alone is not enough to show that Liz's police report was

false.  *See Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995) (holding that "the mere fact a prosecution was unsuccessful does not mean it was not supported by probable cause" where the plaintiff "[did] not point to any evidence indicating that probable cause was lacking"), *as amended on denial of reh'g and reh'g en banc* (Dec. 29, 1995).

In contrast, Liz submits her declaration, in which she states under penalty of perjury that "[a]ll of the information [she] provided to the SDPD officer was true and accurate." (Liz Rodriguez Decl. ¶ 3, ECF No. 18-3.)  In light of the record before the Court and the evidentiary burden that Moore carries at the second step of the anti-SLAPP analysis, the Court finds that Moore has not shown that Liz falsified her domestic violence allegations. *See Sweetwater Union High Sch. Dist.*, 6 Cal. 5th at 940 (requiring the plaintiff to supply competent, admissible evidence at the second step of the anti-SLAPP analysis to demonstrate that the claim is factually substantiated).

Similar deficiency in factual evidence exists as to Moore's allegations that the Rodriguez Defendants "us[ed] their contacts at the Chula Vista Department and the California State Attorney's General's Office in a false attempt to have [him] charged with domestic violence."  (FAC ¶¶ 61, 82.)  Moore attaches copies of text messages and emails to his FAC to show that Jesse Rodriguez requested his subordinate, Ms. Prior, call him before she contacted the conflicts division of the California Attorney General's Office.  (*Id.* Ex. 2.)  Moore may not rely on his pleading alone to satisfy his burden at the second step of the anti-SLAPP analysis.  *See Sweetwater Union High Sch. Dist.*, 6 Cal. 5th at 940.  Even if the Court were to accept Moore's exhibits, other parts of the FAC allege that the matter was eventually referred to the Attorney General's Office, who declined to issue any charges against Moore.  (*Id.* ¶ 25.)  Because Moore cannot satisfy the element of the Bane Act claim that himself or his property was injured as a result of the Rodriguez Defendants' actions, *see Austin B.*, 149 Cal. App. 4th at 882, he has not shown that his Bane Act claim arising from the Rodriguez Defendants' communications concerning allegations of domestic violence survives the second step of the anti-SLAPP analysis.

### 2. Negligence

Moore's negligence claim that arises from protected activity is based on the same set of factual allegations as his Bane Act claim arising from the Rodriguez Defendants' communications concerning allegations of domestic violence. For the same reasons stated above, Moore's claim is factually insufficient because Moore only supplies conclusory factual allegations and provides the Court with no evidence required by the second step of the anti-SLAPP analysis. *See supra* Part II.B.1. Moore has not shown that his negligence claim survives the second step of the anti-SLAPP analysis.

Therefore, the Court grants the motion to strike in part as to Moore's claim for the violation of the Bane Act (Second Cause of Action) and negligence (Fifth Cause of Action) arising from the Rodriguez Defendants' communications concerning allegations of domestic violence. The Court denies the remaining parts of the motion to strike.

### C. Attorney's Fees

Moore requests attorney's fees. (ECF No. 23 at 22–23.) The Rodriguez Defendants do not request attorney's fees. Only a prevailing party may recover attorney's fees and costs under the anti-SLAPP statute. *See* Cal. Civ. Proc. Code § 425.16(c)(1) ("[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs."). Because the Court grants the motion to strike in part, the Rodriguez Defendants are the prevailing parties. *See Mann v. Quality Old Time Serv., Inc.*, 139 Cal. App. 4th 328, 339–40 (2006) (holding that a defendant who partially prevails on an anti-SLAPP motion is a "prevailing defendant" under section 425.16(c)). The Court denies Moore's motion for attorney's fees because he is not the prevailing party.

## RULE 12(b)(6) MOTION TO DISMISS

### I. Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P.

12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and plain statement" of plaintiff's claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); *see also Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009). In assessing a motion to dismiss, the court must accept all factual allegations pleaded in the complaint as true and draw all reasonable inferences from them in favor of the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

   "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on other grounds by*, 275 F.3d 1187 (9th Cir. 2001). It is not proper for the court to assume that "the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . law[] in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## II.     The Rodriguez Defendants' Rule 12(b)(6) Motion

The Rodriguez Defendants seek to dismiss all of Moore's claims raised against them. Having found that Moore's claims for the violation of the Bane Act (Second Cause of Action) and negligence (Fifth Cause of Action) arising from the Rodriguez Defendants' communications made in connection with domestic violence allegations should be stricken under the anti-SLAPP statute, the Court analyzes only those claims that remain, which are:

- First Cause of Action for violation of the Fourteenth Amendment;
- Second Cause of Action for violation of the Bane Act based on
  - the allegation that the Rodriguez Defendants illegally obtained and used Moore's prison psychiatric records at mediation; and
  - the allegation that the Rodriguez Defendants threatened Moore with a perjury charge, in connection with Moore's application for unemployment benefits;
- Third Cause of Action for violation of the right to privacy;
- Fourth Cause of Action for violation of California Civil Code section 1798.53; and
- Fifth Cause of Action for negligence based on
  - the allegation that the Rodriguez Defendants illegally obtained and used Moore's prison psychiatric records at mediation; and
  - the allegation that the Rodriguez Defendants threatened Moore with a perjury charge, in connection with Moore's application for unemployment benefits.

### A.     Section 1983 Claim for Violation of Substantive Due Process

The Court construes Moore's first cause of action for violation of the substantive due process right as a cause of action brought under 42 U.S.C. § 1983. *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) ("[N]o heightened pleading rule requires plaintiffs

- 25 -

seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim.").  Section 1983 states that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  To state a *prima facie* claim under section 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  The Rodriguez Defendants challenge both elements of Moore's section 1983 claim for the violation of his substantive due process rights: they argue that Moore's pleading does not state (1) a deprivation of a liberty interest and (2) an official conduct made under color of state law.

### 1. Deprivation of a Protected Interest

The Fifth and Fourteenth Amendments of the Constitution "forbid[] the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301–02 (1993); *see also Daniels v. Williams*, 474 U.S. 327, 331 (1986) (explaining that substantive due process "bar[s] certain government actions regardless of the fairness of the procedures used to implement them").  To state a substantive due process claim, "[a]s a threshold matter, . . . 'a plaintiff must show a government deprivation of life, liberty, or property.'" *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 948 (9th Cir. 2004) (punctuation omitted) (quoting *Nunez v. City of Los*

20cv1481

*Angeles*, 147 F.3d 867, 871 (9th Cir. 1998)); *see also Vargas v. City of Philadelphia*, 783 F.3d 962, 973 (3d Cir. 2015).[3]

Moore's FAC alleges that the Rodriguez Defendants violated his substantive due process rights when they: (1) "illegally and surreptitiously removed Plaintiff's confidential and privacy protected prison psychiatric records without his consent"; (2) used those prison psychiatric records at mediation to prove Moore was an unfit parent, which resulted in a removal of Moore's parental rights; (3) "used the power and authority of the San Diego County District Attorney's Office to obtain Moore's application for unemployment benefits and Moore's testimony before that tribunal in an attempt to have the San Diego County District Attorney's Office falsely charge Moore with perjury"; (4) and "trumped up false domestic violence charges against Moore by making false reports to the Chula Vista Police Department," leading to the removal of his parental rights. (FAC ¶¶ 49–53.) The court analyzes each allegation in turn to examine whether any plausibly states that the Rodriguez Defendants' conduct was a cause in fact of deprivation of Moore's protected liberty interests.

### a. Unconsented Access to and Removal of Moore's Prison Psychiatric Records

First, Moore alleges that the Rodriguez Defendants removed his prison psychiatric records without his consent. (FAC ¶ 48.) "[O]ne aspect of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment is 'a right of personal privacy, or a guarantee of certain areas or zones of privacy.'" *Carey v. Population Servs., Int'l*, 431 U.S. 678, 684 (1977) (quoting *Roe v. Wade*, 410 U.S. 113, 152 (1973)). "This right to privacy protects . . . 'the individual interest in avoiding disclosure of personal matters.'"

---

[3] The Rodriguez Defendants do not challenge the second element of a substantive due process claim.

*Marsh v. Cty. of San Diego*, 680 F.3d 1148, 1153 (9th Cir. 2012) (citing *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977)).  As one court in this circuit has held,

> the privacy interests of both a psychiatrist and his patient in the psychiatrist's confidential medical files are very important. Confidentiality of psychiatrist-patient communications is essential to preserve an individual's freedom of choice in deciding whether to seek psychiatric care, to encourage a patient to volunteer sensitive personal information in the course of treatment, and to enable a psychiatrist to conduct such treatment in the best possible manner.

*Hawaii Psychiatric Soc., Dist. Branch of Am. Psychiatric Ass'n v. Ariyoshi*, 481 F. Supp. 1028, 1046–47 (D. Haw. 1979).  For this reason, there is "little doubt" that a patient's interest in keeping his or her psychiatric records confidential constitutes a liberty interest protected by the Due Process Clause.  *Id.* at 1043.  The Court finds that Moore's interest in keeping his psychiatric records private is a constitutionally protected liberty interest.

### b.    Psychiatric Records Attributing to Loss of Parental Rights

Second, Moore alleges that Liz's use of his prison psychiatric records resulted in a removal of his parental rights.  The Rodriguez Defendants do not dispute that Moore holds a protected liberty interest in his parental rights over his son.  It is well established in this circuit that "a parent has a constitutionally protected liberty interest in the companionship and society of his or her child."  *Kelson v. City of Springfield*, 767 F.2d 651 (9th Cir.1985), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 328 (1986).  Instead, the Rodriguez Defendants argue that Moore's theory of liability, as articulated in his operative pleading, does not implicate that right.  The Court agrees.

The only factual allegation that is relevant to the removal of Moore's parental rights pertains to the family court's grant of a TRO against Moore on October 4, 2018, under which Moore was not allowed to visit his son until October 24, 2018.  (FAC ¶ 23.)  The family court lifted the TRO, finding lack of evidence that Moore posed a risk to his son.  (*Id.*)

- 28 -

Although Moore now argues that the TRO was granted because of the family court's consideration of his prison psychiatric records, that is not supported by his own pleading. According to the FAC, in September 2018, the family court denied Liz's first request for a TRO requested on the grounds of Moore's mental health. (FAC ¶ 21.) The family court held a hearing on September 25, 2018, at which time the judge cited the lack of evidence of domestic violence as the reason of the denial. (*Id.*)

Based on these allegations, the Court, even when reading Moore's FAC in the light most favorable to him, cannot draw a plausible inference that the production of Moore's prison psychiatric records was a cause in fact of deprivation of Moore's protected liberty interests in the companionship and society of his child.

### c.    Perjury Investigation

The third allegation that Moore raises in support of his substantive due process claim is that the Rodriguez Defendants abused their office to direct the employees of the District Attorney's Office to pursue a baseless investigation against Moore for perjury. The Rodriguez Defendants argue that Moore fails to state any protected liberty interest was harmed as a result of the perjury investigation. The Court agrees.

Moore's operative pleading does not allege that the perjury investigation caused the deprivation of his parental rights to his son. Instead, Moore alleges that he "suffered emotional trauma as he was forced to confront the real possibility that Defendants would successfully thwart his desire to co-parent his son G.M., and send [Moore] back to prison." (FAC ¶ 56.) Emotional trauma does not constitute a protected interest. The Court finds instructive the Supreme Court's holding in *Paul v. Davis*, 424 U.S. 693 (1976). There, after wrongfully arresting the petitioner for shoplifting, the local police department published the petitioner's picture and name, along with those of other convicts, in flyers that were distributed to 800 stores in the local community. *Id.* at 694. Petitioner alleged that he suffered from "fear of being suspected of shoplifting and possibly apprehended," in addition to damage to his reputation. *See id.* at 697–98. The Supreme Court denied

petitioner any relief for his Fourteenth Amendment due process claim, holding in part that his action did not implicate a constitutionally protected interest. *See id.* at 712; *see also Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 971 (9th Cir. 2010) (holding that "allegations of 'psychological trauma' are not sufficient" to state a protected liberty or property interest). Here, too, Moore's claimed emotional trauma is not enough to implicate a protected interest. Moore states no other protected interest.

Therefore, Moore has not stated a plausible claim that the Rodriguez Defendants' attempts to charge him with perjury was a cause in fact of the deprivation of any constitutionally protected interest.

### d.    False Reports of Domestic Violence

The final allegation that Moore raises in support of his substantive due process cause of action is that the Rodriguez Defendants sought to charge Moore with domestic violence based on Liz's false complaints of domestic violence. As an initial matter, Moore's pleading contains only conclusory allegations, if any, that the Rodriguez Defendants colluded with the police to attempt to charge him with domestic violence. The Court disregards allegations that are solely conclusory. *See Sprewell*, 266 F.3d at 988.

The Complaint also alleges that because of the domestic violence reports that Liz filed, which Moore alleges were false, the family court granted a restraining order that temporarily took away Moore's right to visit his son between October 4, 2018, and October 24, 2018. (FAC ¶ 23.) A parent's separation from his or her child during a twenty-day period may implicate the parent's protected interest in the companionship and society of his child. *See Ovando v. City of Los Angeles*, 92 F.Supp.2d 1011, 1018–20 (C.D. Cal. 2000) (finding that the plaintiff-daughter held a Fourteenth Amendment right in her father's society and comfort and may pursue section 1983 claim in connection with temporary loss of such right while father was imprisoned and noting that "due process rights apply to the separation of parent and child, even if the separation is only temporary").

*But cf. Willard v. City of Myrtle Beach, SC*, 728 F. Supp. 397, 404 (D.S.C. 1989) (finding that a four-hour detention of a child did not implicate the parent's liberty interest).

Reading Moore's FAC in the light most favorable to him, the Court finds that Moore has stated a protected liberty interest in connection with his allegation that Liz's filing of false police reports resulted in a twenty-day TRO that banned him from seeing his son.

### 2.    State-Action and Under-Color-of-Law Requirements

The Fourteenth Amendment "can be violated only by conduct that may be fairly characterized as 'state action'" because the Amendment is directed at the States. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). A plaintiff who believes his or her rights secured by the Fourteenth Amendment have been violated may bring an action under 42 U.S.C. § 1983, which "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.'" *Id.* (quoting 42 U.S.C. § 1983). Thus, to state a claim for the violation of the Fourteenth Amendment under 42 U.S.C. § 1983, the plaintiff must show both that the challenged conduct constitutes state action, as required by the Fourteenth Amendment, and that the action has been made under color of law, as required by section 1983.

State Action. To satisfy the state action requirement, "the conduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the State." *Lugar*, 457 U.S. at 937. The "fair attribution" inquiry is composed of two parts: "[f]irst, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible"; and "[s]econd, the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* A person may be a state actor "because he [or she] is a state official, because he [or she] has acted together with or has obtained significant aid from state officials, or because his [or her] conduct is otherwise chargeable to the State." *Id.*

- 31 -

Under Color of Law.   "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal quotations and citation omitted). Private parties are generally not acting under color of state law. *Price v. State of Haw.*, 939 F.2d 702, 707–08 (1991); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful."). But when a private party "act[s] with the knowledge of and pursuant to that [law]," the person acts "under color of law." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 161 n.23 (1970).

The state-action and the under-color-of-state-law requirements are closely related. *Lugar*, 457 U.S. at 928. "[I]n a § 1983 action brought against a state official, the statutory requirement of action 'under color of state law' and the 'state action' requirement of the Fourteenth Amendment are identical." *Id.* at 929. A more general rule, which encompasses a Section 1983 action challenging a private party's conduct, is that "[i]f the challenged conduct of [the defendants] constitutes state action as delimited by . . . prior [precedential] decisions, then that conduct [is] also action under color of state law and will support a suit under § 1983." *Id.* at 935. The converse is not true: "although . . . conduct satisfying the state-action requirement of the Fourteenth Amendment satisfies the statutory requirement of action under color of state law, it does not follow from that that all conduct that satisfies the under-color-of-state-law requirement would satisfy the Fourteenth Amendment requirement of state action." *Id.* at 935 n.18. In sum, when it involves a private party's conduct, "the concept of color of law is broader than the concept of state action." Joseph G. Cook and John L. Sobieski Jr., 2 Civil Rights Actions ¶ 7.11 (2020).

Here, having found that Moore has stated a protected liberty interest in connection with the Rodriguez Defendants' unconsented removal of his prison psychiatric records and Liz's filing of false domestic violence reports, *see supra* Part II.A.1, the Court analyzes

those clams to determine whether Moore has satisfied the state-action and the color-of-law requirements.

### a. Unconsented Access to and Removal of Moore's Prison Psychiatric Records

The Rodriguez Defendants argue that Moore's Fourteenth Amendment claim concerning his prison psychiatric records involves "merely private conduct" because the alleged access to and removal of the records was a part of "the wholly personal pursuit of seeking an advantage and a result in the custody dispute with Liz." (Mem. ISO Rodriguez Defs.' Mot. Dismiss, ECF No. 19-1 at 14 (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).  The Rodriguez Defendants' argument lacks merit.

To determine whether the unconsented access to and removal of Moore's private psychiatric records constitutes state action, the first question for the Court to ask is whether the deprivation of Moore's privacy interests was caused by the exercise of a right or privilege created by the State.  The allegations contained in Moore's FAC suggest that it was.  Moore alleges that the Rodriguez Defendants did not obtain the records through publicly available means, such as through issuing a subpoena or making a request under the Public Records Act.  (FAC ¶ 19.)  Moore alleges that a prison employee accessed his prison psychiatric records "at the behest of both Liz Rodriguez and Jesse Rodriguez, in their official roles and capacities as district attorneys." (*Id.* ¶ 20.)  According to Moore, the Rodriguez Defendants obtained his records by "using the resources and authority of the District Attorney's Office." (*Id.*)  These allegations plausibly state that the Rodriguez Defendants exercised their privilege as prosecutors.

The second question that the Court must ask is whether the Rodriguez Defendants, who are the parties charged with the deprivation, may fairly be said to be state actors.  Abuse of power authorized law, even if that is inconsistent with state law, may still constitute state action and action taken under color of law.  *See Monroe v. Pape*, 365 U.S. 167, 187 (1961) (holding that the complaint stated a Fourteenth Amendment claim against

- 33 -

police officers by alleging that the officers abused their power in a manner unauthorized by law), *overruled on other grounds by Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); *see also Van Ort v. Est. of Stanewich*, 92 F.3d 831, 838 (9th Cir. 1996) (holding that an officer who pretends to act in the performance of his or her official duty acts under color of law). The Court finds instructive the Ninth Circuit's holding that a state employee who accessed confidential information through a government-owned computer database acted under color of state law. *McDade v. West*, 223 F.3d 1135, 1140–41 (9th Cir. 2000). In that case, the Ninth Circuit found it irrelevant that the defendant accessed the confidential information for her personal motive, that is, to assist her husband's custody dispute with the plaintiff. *Id.* Here too, Moore's allegation is that the Rodriguez Defendants used their resources and authority as prosecutors employed by the District Attorney's Office to have a prison employee obtain Moore's psychiatric records. (FAC ¶ 20.) Therefore, the Rodriguez Defendants' access to and removal of Moore's prison psychiatric records constitute state action made under color of law.

### b.     False Reports and Domestic Violence

The Rodriguez Defendants argue that filing a police report for domestic violence is not state action or conduct under color of law. The Court agrees. Moore's FAC establishes no connection between Liz's filing of police reports in her private capacity and her employment as a county prosecutor. Because Liz's filing of police reports against Moore, false or not, is purely private conduct, Moore's claim based on Liz's private conduct does not satisfy the requirements of the Fourteenth Amendment or Section 1983.

### 3.     Conclusion

For the reasons stated above, the Court denies the Rodriguez Defendants' Rule 12(b)(6) motion as to Moore's Fourteenth Amendment substantive due process claim arising from the Rodriguez Defendants' access to and removal of Moore's prison

psychiatric records. In all other aspects, the Court grants the Rodriguez Defendants' Rule 12(b)(6) motion as to Moore's Fourteenth Amendment substantive due process claim.

## B.    Violation of the Bane Act

The Rodriguez Defendants seek to dismiss Moore's Bane Act claim. Because the Court has granted the Rodriguez Defendants' anti-SLAPP motion as to Moore's claim for the violation of the Bane Act arising from Liz's filing of the police reports and the Rodriguez Defendants' attempt to charge Moore with domestic violence, the Court need not reach those issues. The Court turns to examine whether Moore states a plausible Bane Act claim arising from his allegations that (1) the Rodriguez Defendants illegally obtained his prison psychiatric records and produced them at mediation in an effort to infringe his parental rights and (2) the Rodriguez Defendants threatened Moore with a perjury charge, in connection with Moore's application for unemployment benefits.

### 1.    *Prima Facie* Case

The elements of a Bane Act claim are: (1) the defendant interfered with or attempted to interfere with the plaintiff's constitutional or statutory right by threatening or committing violent acts; (2) the plaintiff reasonably believed that if he or she exercised his or her constitutional right the defendant would commit violence against him or her or his or her property; (3) the defendant injured the plaintiff or the plaintiff's property to prevent him or her from exercising his or her constitutional right or retaliate against the plaintiff for having exercised his or her constitutional right; (4) the plaintiff was harmed; and (5) the defendant's actions were a substantial factor in causing the plaintiff's harm. *Austin B.*, 149 Cal. App. 4th at 882 (citing California's model Bane Act instruction, CACI Instruction No. 3066); *accord Lyall*, 807 F.3d at 1195–96.

According to Moore's FAC, Liz threatened Moore that she and her father "would send Moore back to prison" if he sought custody of their son. (FAC ¶ 16.) Moore alleges that Liz's threat was "made at the behest of, and with assent of" Jesse. (*Id.* ¶ 60.) Moore

alleges, in relevant parts, that the Rodriguez Defendants carried out their threats by (1) illegally obtaining Moore's psychiatric records from the state prison and using it against Moore during mediation of the custody and by (2) using their authority and office as prosecutors to influence an investigator employed at the D.A.'s Office to investigate Moore for perjury in connection with his unemployment benefits application. (*Id.* ¶ 61.) Moore alleges that the Rodriguez Defendants' acts caused him "extreme fear, anguish, and emotional turmoil." (*Id.* ¶ 62.) Moore's allegations, when construed in the light most favorable to him, satisfy all five elements of the Bane Act.

### 2. Section 821.6 Immunity

The Rodriguez Defendants argue that Moore's claims are barred by a statute that grants immunity to prosecutors acting within the scope of their employment. The provision of the statute states: "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov. Code § 821.6. Section 821.6 "extends to actions taken in preparation for formal proceedings," including "actions taken in the course or as a consequence of an investigation," and actions "incidental to the investigation of crimes." *Blankenhorn v. City of Orange*, 485 F.3d 463, 488 (9th Cir. 2007). Extending the immunity to steps taken pursuant to an investigation is justified because "investigation is 'an essential step' toward the institution of formal proceedings." *Amylou R. v. Cty. of Riverside*, 28 Cal. App. 4th 1205, 1210 (1994) (citing *Kemmerer v. Cty. of Fresno*, 200 Cal. App. 3d 1426, 1437 (Ct. App. 1988), *disapproved of on other grounds by Quigley v. Garden Valley Fire Prot. Dist.*, 7 Cal. 5th 798, 444 (2019)).

The California Supreme Court and the Ninth Circuit have "interpreted section 821.6 as 'confining its reach to malicious prosecution actions.'" *Garmon v. Cty. of Los Angeles*, 828 F.3d 837, 847 (9th Cir. 2016) (citing *Sullivan v. Cty. of Los Angeles*, 12 Cal. 3d 710, 721 (1974)). "Malicious prosecution 'consists of initiating or procuring the arrest and prosecution of another under lawful process but from malicious motives and without

- 36 -

probable cause.'" *Sullivan*, 12 Cal. 3d at 720 (quoting 4 Witkin, Summary of Cal. Law 2522–23 (8th ed. 1974)). Some courts have limited section 821.6 liability to claims specifically labeled malicious prosecution, and some others have examined the "the conduct from which the claim arises." *Colonies Partners LP v. Cty. of San Bernardino*, No. EDCV18420JGBSHKX, 2018 WL 6137147, at *12 (C.D. Cal. Oct. 2, 2018). Under the conduct-based approach, section 821.6 applies if the underlying facts make the plaintiff's claim "in effect one of malicious prosecution," and the plaintiff cannot avoid the application of section 821.6 immunity by merely labelling the claim as a different cause of action. *Id.*

Here, Moore's cause of action is not for malicious prosecution but for the violation of the Bane Act. The conduct from which the Bane Act claim arises is the threat to imprison Moore. Although the allegations about the perjury investigation may satisfy the elements of malicious prosecution, the investigation is alleged only as a means through which the Rodriguez Defendants attempted to carry out their threat. The same holds for the allegation that the Rodriguez Defendants illegally obtained Moore's prison psychiatric records and used it at mediation against Moore: the focus of the claim is the threat to imprison Moore. Because neither the cause of action nor the conduct from which Moore's Bane Act claim arises constitutes malicious prosecution, section 821.6 does not immunize the Rodriguez Defendants from liability under either the nominal approach or the conduct-based approach.

### 3. Section 47(b) Privilege

Statements made during mediation are shielded from a claim for damages under section 47(b) of the California Civil Code. *Optional Cap., Inc.*, 18 Cal. App. 5th at 118. The privilege granted under section 47(b) operates as an absolute bar against civil action for damages. *Hagberg*, 32 Cal. 4th at 360. Liz's submission of Moore's psychiatric records at mediation falls within the scope of the section 47(b) privilege.

To the extent that Moore argues that the absolute litigation privilege does not apply because the Rodriguez Defendants obtained confidential records through unlawful means, a similar argument was rejected in *Bergstein v. Stroock & Stroock & Lavan LLP*, 236 Cal. App. 4th 793 (2015).  In *Bergstein*, the court found that section 47(b) privilege applied, regardless of "[the plaintiffs'] allegations that defendants solicited and used confidential information for the purpose of filing various actions against plaintiffs." *Id.* at 815.  Moore's Bane Act claim tied to his prison psychiatric records boils down to the theory that the Rodriguez Defendants carried out their threat to curtail his parental rights by obtaining his prison psychiatric records and using them at mediation to argue that he is an unfit parent. Because Moore's allegations behind the Bane Act claim are that Liz's communicative conduct at the custody proceeding constituted a threat or coercion, his challenge is within the scope of the litigation privilege.

In addition, even if Liz lied at mediation about how she obtained Moore's records, that would not change the outcome, given that the section 47(b) privilege is "absolute in nature, applying 'to all publications, irrespective of their maliciousness.'" *See Optional Cap., Inc.*, 18 Cal. App. 5th at 116.  Because the absolute litigation privilege under section 47(b) bars Moore's claim for damages for Liz's use of Moore's prison psychiatric records at mediation, the Rodriguez Defendants' Rule 12(b)(6) motion is granted as to that claim.

### 4.      Conclusion

Moore has stated a plausible claim under the Bane Act as to the perjury investigation but not as to Moore's prison psychiatric records.

### C.      Right to Privacy

California's "constitutional provision protecting the right of privacy (Cal. Const., art. I, § 1) . . . supports a cause of action for an injunction," but it does not confer on a litigant a private right of action for damages. *Clausing v. San Francisco Unified Sch. Dist.*, 221 Cal. App. 3d 1224, 1237 (Ct. App. 1990) (affirming demurrer because Cal. Const. art.

I, § 1 does not support a cause of action for damages). Moore's cause of action for the violation of right to privacy seeks damages, not an injunction, as relief. (FAC ¶¶ 71–72.) Therefore, the Court grants the Rodriguez Defendants' Rule 12(b)(6) motion as to Moore's cause of action for right to privacy.

### D. California Civil Code Section 1798.53

Moore's fourth cause of action alleges a violation of his privacy rights under California Civil Code section 1798.53. Moore alleges that the Rodriguez Defendants illegally obtained his prison psychiatric records and produced the records in mediation.

Section 1798.53 of the California Civil Code provides:

> Any person, other than an employee of the state or of a local government agency acting solely in his or her official capacity, who intentionally discloses information, not otherwise public, which they know or should reasonably know was obtained from personal information maintained by a state agency or from "records" within a "system of records" (as these terms are defined in the Federal Privacy Act of 1974 (P.L. 93-579; 5 U.S.C. 552a)) maintained by a federal government agency, shall be subject to a civil action, for invasion of privacy, by the individual to whom the information pertains.

The Rodriguez Defendants argue that the plain language of the statute does not proscribe obtaining the information and the only allegation contained in Moore's FAC is that Liz disclosed the information at mediation. The Rodriguez Defendants subsequently argue that the disclosure at mediation is subject to California's absolute litigation privilege which bars a claim for damages.

As discussed in detail above, the absolute litigation privilege under section 47(b) of the California Civil Code immunizes from tort liability any communication made during mediation. *See supra* II.B.3. Thus, Moore cannot seek damages for Liz's production of Moore's prison psychiatric records at mediation.

The same cannot be said as to the initial "disclosure" of Moore's psychiatric records when the Rodriguez Defendants obtained them. The statute defines "disclose" broadly to include "to disclose, release, transfer, disseminate, or otherwise communicate all or any

part of any record orally, in writing, or by electronic or any other means to any person or entity." Cal. Civ. Code § 1798.3. The issue is whether Moore's allegation that the Rodriguez Defendants "illegally and surreptitiously removed" Moore's records from prison satisfies the statute's definition of disclosure. (*See* FAC ¶ 75.) Reading the pleading in the light most favorable to Moore, the Court can draw a reasonable inference that the Rodriguez Defendants transferred, disseminated, or otherwise communicated Moore's prison psychiatric records in the process of removing the records from the California Department of Corrections.

Therefore, the Rodriguez Defendants' Rule 12(b)(6) motion is granted as to the alleged disclosure of the prison psychiatric records at mediation but denied as to the initial disclosure made during the removal of the records from the record's custodian.

### E. Negligence

In order to state a claim for negligence, the plaintiff must allege that: (1) the defendant owed the plaintiff a duty to exercise due care; (2) defendant breached that duty; (3) causation; and (4) damages. *See Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 477 (2001). The duty of care "may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 985 (1993) (citation omitted).

Moore alleges that the Rodriguez Defendants owed a duty as prosecutors not to "access[] personal information and trump[] up bad faith criminal investigations for personal gain." (FAC ¶ 81.) He alleges that the Rodriguez Defendants breached that duty when they (1) "us[ed] their official position and authority to illegally obtain Moore's personal and confidential psychiatric records from Richard J. Donovan State Prison, records which were then used by Liz Rodriguez during mediation for the sole purpose of convincing the mediator that that Moore was an unfit parent"; (2) "us[ed] District Attorney Investigator [Giralamo] to obtain copies of Moore's application and testimony from Moore's claim for unemployment benefits in a bad-faith attempt to have Moore charged

with perjury"; and (3) "us[ed] their contacts at the Chula Vista Department and the California State Attorney's General's Office in a faith [sic] attempt to have Moore charged with domestic violence." (*Id.* ¶ 82.)

Because the Court has granted the Rodriguez Defendants' anti-SLAPP motion as to Moore's claims for negligence arising from accusations of domestic violence, the Court need not reach that issue. The Court turns to examine whether Moore has stated a plausible claim of negligence arising from the Rodriguez Defendants' attempts to charge him with perjury and their access to and use of Moore's prison psychiatric records.

### 1. Removal and Use of Moore's Prison Psychiatric Records

As an initial matter, section 821.6 of the California Government Code does not immunize the Rodriguez Defendants' alleged removal and use of Moore's prison psychiatric records because those actions are outside the scope of their employment as prosecutors. *See Stanson*, 17 Cal. 3d at 225. Thus, if Moore raises allegations that plausibly state the elements of a negligence claim arising from the Rodriguez Defendants' removal and use of Moore's prison psychiatric records, the claim survives the Rule 12(b)(6) motion.

### a. Duty and Breach

The first question is whether the Rodriguez Defendants owed a duty not to breach Moore's private prison psychiatric records. "All persons are required to use ordinary care to prevent others [from] being injured as the result of their conduct." *Rowland v. Christian*, 69 Cal. 2d 108, 112 (1968), *superseded by statute on other grounds as stated in Calvillo-Silva v. Home Grocery*, 19 Cal. 4th 714, 722 (1998) (citations omitted). Courts rely on the following factors to determine whether a party owes another a duty of reasonable care:

> [T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the

burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

*Id.* at 113 (citations omitted). These factors may be used to establish a defendant's duty of care not to breach another's private information. *See Castillo v. Seagate Tech., LLC*, No. 16-cv-01958-RS, 2016 WL 9280242, at *2–3 (N.D. Cal. Sept. 14, 2016) (stating "the *Rowland* factors compel the conclusion [the defendant] was duty-bound to take reasonable steps to protect all personal identifying information it obtained from its employees"); *see also Catsouras v. Dep't of Cal. Highway Patrol*, 181 Cal. App. 4th 856, 864 (2010), *as modified on denial of reh'g* (Mar. 1, 2010) (holding that "the CHP and its officers owed plaintiffs a duty of care not to place decedent's death images on the Internet for the purposes of vulgar spectacle" under the *Rowland* factors).

Applying the *Rowland* factors, the Court finds that Plaintiff has stated sufficient facts to state that the Rodriguez Defendants owed him a duty of reasonable care not to infringe his privacy rights over his prison psychiatric records. It is both foreseeable and certain that Plaintiff would suffer harm as a result of the Rodriguez Defendants allegedly scouring his private psychiatric records and using them against him in court to prove that he is an unfit parent. Furthermore, Moore alleges the Rodriguez Defendants were responsible for the breach and disclosure of his prison psychiatric records. Assuming it is true that the Rodriguez Defendants accessed, removed, and disclosed Moore's prison psychiatric records without his consent, there is a close enough connection between Defendants' conduct and Moore's injury.

### b. Causation and Damages

The right to recover for emotional distress caused by a breach of duty of care is analyzed under the traditional negligence framework. *Christensen v. Superior Ct.*, 54 Cal. 3d 868, 884 (1991) (holding that negligent infliction of emotional distress is not an

independent cause of action).  In *Molien v. Kaiser Found. Hosps.*, 27 Cal. 3d 916 (1980), the California Supreme Court has examined the extent to which the law should allow the recovery of damages for the negligent infliction of emotional or mental distress unaccompanied by physical injury.  The *Molien* court rejected the prior rule that emotional distress must be accompanied by physical injury, finding the requirement was both overinclusive and underinclusive for its purported purpose of screening false claims.  *Id.* at 927–30.  The court replaced the rule with a standard that would better screen out false claims: "the general standard of proof required to support a claim of mental distress is some guarantee of genuineness in the circumstances of the case."  *Id.* at 930.  Because "the jurors are best situated to determine whether and to what extent the defendant's conduct caused emotional distress," the court concluded that courts "usurp[] the jury's function" by screening the claims at the pleading stage for severity of emotional distress.  *Id.*

Applying these principles, and reading the FAC in the light most favorable to Moore, the Court finds Moore's allegations satisfy the damages element of his negligence claim. The Court also finds that the causation element is satisfied.  At this stage, it is plausible that Moore can prove that the Rodriguez Defendants proximately caused him serious emotional distress and are liable to him for breaching their duty not to infringe his privacy rights over his prison psychiatric records.  If, after conducting discovery, facts reveal that the elements of negligence are not satisfied and the Rodriguez Defendants are not liable to Moore for negligence in connection with Moore's prison psychiatric records, the claim can then be revisited.

### 2.    Attempt to Charge Moore with Perjury

Moore cannot state a plausible negligence claim tied to the Rodriguez Defendants' attempts to charge Moore with perjury.  As stated in detail above, prosecutorial immunity under section 821.6 bars claims arising from malicious prosecution.  *See supra* Part II.B.2. In determining whether Moore's negligence claim arises from malicious prosecution, the Court takes the conduct-based approach, under which the Court assesses "the conduct from

which the claim arises, not merely the cause of action under which the claim is pled." *Colonies Partners LP*, 2018 WL 6137147, at *12.

Here, Moore alleges that the Rodriguez Defendants injured him when they instructed a county investigator to scour his EDD records in a bad-faith attempt to charge him with perjury. The duty asserted is a duty not to "trump[] up bad faith criminal investigations for personal gain." (FAC ¶ 81.) Although the cause of action is for negligence, the alleged conduct from which the cause of action arises falls within the definition of malicious prosecution. *See Sullivan*, 12 Cal. 3d at 720 (defining malicious prosecution as an act "consist[ing] of initiating or procuring the arrest and prosecution of another under lawful process but from malicious motives and without probable cause"); *see also Colonies Partners LP*, 2018 WL 6137147, at *12 (applying the conduct-based approach). Because Moore's negligence claim arises from the Rodriguez Defendants' conduct that sounds in malicious prosecution, section 821.6 immunizes the conduct from tort liability.

### 3. Conclusion

Moore states a plausible claim of negligence as to the Rodriguez Defendants' access, removal, and disclosure of Moore's prison psychiatric records but not as to the remaining allegations. Therefore, the Rodriguez Defendants' Rule 12(b)(6) motion is granted in part and denied in part.

The Court denies as moot the Rodriguez Defendants' Request for Judicial Notice (RJN, ECF No. 20) submitted in connection with their Rule 12(b)(6) motion because the Court did not find the document necessary for resolving the issues and thus did not rely on its contents.

## III. San Diego County's Rule 12(b)(6) Motion

San Diego County seeks to dismiss Moore's cause of action for negligence, which is the only cause of action against the County. (FAC ¶¶ 79–87.) Moore argues that the County owes him damages for the emotional distress he sustained as a result of the

Rodriguez Defendants' alleged abuse of power "because [the Rodriguez Defendants], working within the scope and confines of their employment, knew they were abusing their power by misusing county resources, personnel, and authority in order to deprive Moore of his right to be G.M.'s father." (*Id.* ¶ 84.) Moore argues that the County is liable to him under the doctrine of vicarious liability. The statutory provision that creates vicarious liability states in full:

> (a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

> (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.

Cal. Gov. Code § 815.2.

Subdivision (b) makes clear that if the employee is immune from liability for the challenged conduct, the public entity is not liable for the same conduct unless un exception applies. *Id.* As the Court has explained above, statutory immunity applies to the Rodriguez Defendants' conduct sounding in malicious prosecution taken within the scope of their employment with the District Attorney's Office. Cal. Gov. Code § 821.6; *Blankenhorn*, 485 F.3d at 488; *see supra* Part II.B.2. The Rodriguez Defendants' attempts to charge Moore with perjury or domestic violence without probable cause sound in malicious prosecution and were taken within the scope of their employment. *See supra* Part II.B.2. For those acts, Moore has no claim for damages against San Diego County. Cal. Gov. Code § 815.2.

To the extent that Moore seeks to hold the County liable for the Rodriguez Defendants' conduct taken outside the scope of their employment, both the plain language of the statute as well as case law establish that the County is not liable for such conduct. Cal. Gov. Code § 815.2(a); *see Stanson*, 17 Cal. 3d at 225 (holding that section 815.2

*respondeat superior* liability does not attach to "injuries arising from acts . . . outside the scope of employment").

Therefore, the Court grants the County of San Diego's Rule 12(b)(6) motion and dismisses Moore's negligence claim against the County.

## MOORE'S MOTION TO AMEND THE PLEADING

In opposing the anti-SLAPP motion and the motions to dismiss, Moore seeks the Court's leave to file a Second Amended Complaint. (Pl.'s Opp'n to the Rodriguez Defendants' Anti-SLAPP Mot. at 24:5–7, ECF No. 23; Pl.'s Opp'n to the Rodriguez Defendants' Mot. Dismiss at 27:10–15, ECF No. 25; Pl.'s Opp'n to San Diego County's Mot. Dismiss, ECF No. 26:16–18.) In light of concerns over the futility of a proposed amendment, the Court defers determining whether granting leave is appropriate until the Court may review a proposed amended pleading. If Moore seeks to file a Second Amended Complaint, he must first file a noticed motion for leave to amend with the proposed pleading attached and in compliance with Civil Local Rule 15.1. Any motion to amend the pleading must be filed **on or before June 21, 2021**, in compliance with this Court's Standing Order. *See* Standing Order of the Hon. Cynthia Bashant for Civil Cases ¶ 4.

## CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** the Rodriguez Defendants' anti-SLAPP motion to strike. (ECF No. 18.) As requested by the Rodriguez Defendants, the Court strikes the following from Moore's FAC:

- Paragraph 61: "using their contacts at the Chula Vista Police Department and the California State Attorney General's Office in a failed attempt to have Moore charged with domestic violence."

- Paragraph 82: "using their contacts at the Chula Vista Police Department and the California State Attorney General's Office in a failed attempt to have Moore charged with domestic violence."

- 46 -

The Court **DENIES** Moore's request for attorney's fees made in connection with the Rodriguez Defendants' motion to strike.

The Court **GRANTS IN PART** and **DENIES IN PART** the Rodriguez Defendants' Rule 12(b)(6) motion to dismiss. (ECF No. 19.) The motion is **DENIED** as to:

- the Fourteenth Amendment substantive due process claim brought under 42 U.S.C. § 1983, arising from the Rodriguez Defendants' access to and removal of Moore's prison psychiatric records without his consent;

- the Bane Act claim arising from the Rodriguez Defendants' alleged threat to charge him with perjury;

- the California Civil Code section 1798.53 claim arising from the initial disclosure made during the removal of Moore's prison psychiatric records from the record's custodian; and

- the negligence claim arising from the Rodriguez Defendants' access, removal, and disclosure of Moore's prison psychiatric records.

The Rodriguez Defendants' Rule 12(b)(6) motion is **DENIED AS MOOT** as to:

- parts of Moore's claim for the violation of the Bane Act stricken under the anti-SLAPP statute; and

- parts of Moore's claim for negligence stricken under the anti-SLAPP statute.

The Rodriguez Defendants' Rule 12(b)(6) motion is **GRANTED** as to:

- remaining parts of the Fourteenth Amendment substantive due process claim brought under 42 U.S.C. § 1983;

- remaining parts of the Bane Act claim;

- remaining parts of the section 1798.53 claim;

- the claim for the violation of the right to privacy; and

- remaining parts of the negligence claim.

The Court **DENIES AS MOOT** the Rodriguez Defendants' request for judicial notice. (ECF No. 20.)

The Court **GRANTS** San Diego County's Rule 12(b)(6) motion to dismiss.  (ECF No. 21.)

**IT IS SO ORDERED.**

**DATED: June 2, 2021**

Hon. Cynthia Bashant
United States District Judge